# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DENISE GONZALEZ,

    Plaintiff,

vs.                                                              2:18-cv-00858-WJ-CG

MRC GLOBAL (US) INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed May 9, 2019 **(Doc. 33)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff asserts she was subjected to a hostile work environment, was constructively discharged, and received less pay than her male counterparts. Plaintiff is a former branch manager for Defendant MRC Global, Inc. She alleges the following claims:

    Count I – Constructive discharge in violation of Title VII of the Civil Rights Act of 1964

    Count II – Severe Emotional Distress

    Count III- Violation of the New Mexico Fair Pay for Women Act.

## LEGAL STANDARD

A motion for summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*. The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A court cannot weigh the evidence and determine the truth of the matter. Rather, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## UNDISPUTED FACTS

Defendant's statement of facts are generally undisputed. Plaintiff asserted additional facts, which Defendant generally disputes as "subjective", but Defendant did not object to each fact with particularity or explain with particularity why each additional fact is not supported by the record. Rather, Defendant generally argues that Plaintiff view of her employment situation is irrelevant. Defendant asserts that at trial, it *may* produce evidence to controvert Plaintiff's additional facts, but Defendant did not do so in its reply. This is not sufficient under either Federal Rules of Civil Procedure or the local rules to create a genuine dispute of fact. Therefore, the Court deems Plaintiff's additional facts to be undisputed, but will omit immaterial facts below. The Court finds that the following material facts are not in genuine dispute:

### A. Background and Promotion to Branch Manager.

Defendant provides supplies to businesses operating in the oil and gas industry. Plaintiff worked for Defendant in its Carlsbad, New Mexico branch, in her final position as branch manager. Plaintiff previously worked for Production Specialty as an administrative assistant for five years before Defendant acquired that company. Defendant promoted her to "inside sales" after it acquired Production Specialty.

On November 4, 2014, Defendant promoted Plaintiff to assistant manager. Defendant selected Plaintiff over another male sales employee. Her branch manager was David Ramirez, who was supervised by Defendant's Regional Operations Director Daniel Rappe. Eventually her branch manager left, and the position was open. It appears there were two other applicants for the branch manager position. Plaintiff does not know who they were, whether they were interviewed, or their gender. The branch manager position was first offered to another male employee, who apparently declined the position. As assistant manager, Plaintiff believed she was next in line and applied for the position.

Mr. Rappe gave Plaintiff an offer letter for the manager position without an interview. Plaintiff viewed the promotion to Branch Manager as a "good thing." Mr. Rappe was Plaintiff's direct supervisor once she was promoted to Branch Manager. When she was promoted, Defendant gave her a raise to $75,000. Plaintiff was the only female member of management and was manager for approximately one year before she left.

### B. Disrespect and Lack of support by her immediate supervisor, Daniel Rappe.

In April 2017, Plaintiff sent an employee Ralph Olivas home after he told her in a meeting that no one respected her. Daniel Rappe told her she did not have the authority to send him home. This contradicted the human resources department, which told Plaintiff she has authority to send

3

employees home. In her discussion with Mr. Rappe, Plaintiff accused Mr. Rappe of not "having her back." She believed that he supported other male managers, but not her. She also believed she did not have a good working relationship with Mr. Rappe, and that he did not communicate with her unless it was to express something negative.

Plaintiff also believed that Mr. Rappe did not like her and she told him so. Mr. Rappe asked what she meant and reminded her that he promoted her to Branch Manager. In other words, Mr. Rappe appeared to like her enough to give her a promotion. Plaintiff contacted human resources, which confirmed she had authority to send an employee home. Plaintiff also reported to human resources that she felt Mr. Rappe treated her differently from other branch managers because of her gender.

Plaintiff stated that Mr. Rappe did not talk to any man the way he would talk to her, and did not give Plaintiff respect because of her gender. As evidence, Plaintiff cited to the following incidents:

- Mr. Rappe would shake male managers' hands and greet them, but he would walk past her office and not greet her. He would fail to respond to her emails, but he did not ignore her male predecessor's emails. Moreover, Mr. Rappe did not acknowledge her at a manager's meeting, but did acknowledge other male managers.
- When Plaintiff was an assistant manager, work was passed down to her from her Branch Manager. When she became Branch Manager, she did not have an assistant manager to give work.

Plaintiff reported these concerns to human resources. Immediately thereafter, Mr. Rappe's supervisor, Jason McAnally, visited the Carlsbad branch and met with Plaintiff for half a day. She stated he treated her "super nice." They met again the following day to address Plaintiff's concerns. Mr. Rappe and Mr. McAnally subsequently supported her writing up Ralph Olivas for being disrespectful to her. When Mr. McAnally left, Plaintiff was satisfied. Mr. McAnally told her to bring future concerns to him, and not human resources. Mr. McAnally told her that Mr.

Rappe would not be coming around her and that she did not have to worry about retaliation. Plaintiff agrees that no one disciplined her or retaliated against Plaintiff for (1) sending Mr. Olivas home or (2) reporting the alleged discrimination.

However, Plaintiff notes the following further evidence of disrespect or abuse:

- Other new branch managers were provided with new trucks, but Plaintiff was not. Rather, she inherited the previous manager's truck, which had a broken grill, broken windshield, and cigarette burn marks. Mr. McAnally arranged to provide her with a new truck. Defendant provided Plaintiff a new Dodge Ram work truck within two months of Plaintiff's request. To do so, Defendant re-rerouted a male Branch Manager's new truck to Plaintiff.
- When Plaintiff and Mr. Rappe were going to lunch, he told her "I don't know how a company man is gonna take going out to eat with a woman…" Plaintiff took that to mean he did not know how a customer would feel having a business lunch with her. Plaintiff is not aware of any customers who did not want to work with her because she is a woman.
- Plaintiff asked for a raise in January 2018, and Mr. Rappe told her she did not qualify for one. She does not know why she didn't qualify for one. Every other employee at her branch received a raise.
- Mr. Rappe had offered to help Plaintiff prepare for her branch assessment but did not show up. He would spend upwards of two weeks helping other male branch managers prepare for their assessments.
- Mr. Rappe took a driver from Plaintiff's branch to use him at different locations, while at the same time charging the driver's hours to her branch and telling Plaintiff she had to cut hours at her branch.

Mr. Rappe never put Plaintiff on a performance improvement plan or disciplined her. Plaintiff contends Mr. Rappe is the only employee of Defendant who discriminated against her because of her gender. Plaintiff admits Mr. Rappe never made any sexual comments to her.

### C. **Incidents with David Anaya.**

Mr. Rappe asked Plaintiff to bring David Anaya in to her branch as an outside salesman. David Anaya reported to Regional Sales Manager Christopher Barnes, and not Plaintiff. David Anaya used to be a manager in Artesia, and was friendly with Mr. Rappe. **Doc. 37-1, p. 57.**

David Anaya requested a meeting with Plaintiff to discuss issues he had with her inside sales team. Plaintiff alleges that Mr. Anaya sent her a text with a recording of a meeting they had,

5

while the meeting was ongoing. Plaintiff assumed that Mr. Anaya intended to send the message to Mr. Rappe, and inadvertently sent it to her.

Plaintiff contacted Mr. McAnally about the recording, and said the surreptitious recording was unethical. She believed she could not contact Mr. Rappe about this issue, because he did not support her and would not take action on any issues she raised. Mr. McAnally did not take any action against David Anaya, and instead told Plaintiff that she was not confident in her role as manager.

Plaintiff made the comment to Mr. Rappe that he did not want her as branch manager. He replied "Well, you're the manager now." She perceived that Mr. Rappe approached other people about the branch manager position before approaching her, and that she got the job after Mr. Rappe was "digging the bottom of the barrel." Mr. Rappe did not deny that he approached others first. **Doc. 37-1, p. 67.**

### D. Pay and raises.

Plaintiff was told she did not qualify for a raise on two occasions, while other employees received a raise. The first raise ranged from $1-2 per hour, and the second one $2-4 per hour. Plaintiff was not given a reason for not qualifying for a raise.

Defendant paid branch managers a range of $67,275 to $113,192. The average branch manager salary was approximately $85,338. **Doc. 36, p. 3.** Plaintiff was paid $75,000, which was $38,192 less than the highest paid branch manager and $10,338 less than the average branch manager salary. After Plaintiff left, there was one female branch manager remaining, who was paid the same amount as Plaintiff.

### E. Chris Barnes.

Chris Barnes, a regional sales manager, asked Plaintiff if her branch received an order for "CVN." Plaintiff asked Chris Barnes what the acronym meant, and he told her to figure it out. Plaintiff late learned that Chris Barnes had given her the wrong acronym. Plaintiff asserts that managers would not talk to other male managers in the same manner.

One of Chris Barnes' salesmen sold a ball valve to Chevron. Chris Barnes asked Plaintiff if Chevron had returned the ball valve to her branch. Plaintiff said no, and Chris Barnes demanded that she take a picture of the empty sidewalk to prove there was no crate there. Jason McAnally told her "if that's what he asked you to do, then do it." And then followed up with "I don't appreciate anyone disrespecting my managers. I need you to call him and apologize and follow up with an apology email."

### F. **Plaintiff resigned.**

Plaintiff gave a narrative explaining why she resigned. **Doc. 33, p. 7-8**. The Court summarizes it as follows:

- Plaintiff understood Defendant to be highly focused on profit for the stores. However, she noticed that a salesman she did not supervise, David Anaya, did not produce sales. She approached Daniel Rappe, but he would not take action, and told her to contact Mr. Anaya's supervisor, Chris Barnes. Plaintiff expected Daniel Rappe to approach Chris and take care of the situation. Plaintiff felt she "didn't have [Daniel Rappe's] help for anything. **Doc. 33, p. 7.**
- On the day she quit, Daniel Rappe was in the Carlsbad Branch giving out raises. Daniel Rappe told Plaintiff she did not qualify for a raise.
- David Anaya complained about Plaintiff's inside sales people and told Daniel Rappe that one of Plaintiff's salespeople had lost an $11,000 sale because they did not reply back soon enough.
- Plaintiff stated that David Anaya himself had lost a $100,000 sale, and apparently no action was taken against him. Daniel Rappe told Plaintiff to "let it go." Plaintiff said she "can't do this anymore" and said David Anaya tries to tell her salespeople what to do. She told Daniel Rappe "You've had everyone else's back but mine, especially when I come to you about David Anaya."

Plaintiff then quit and left the office. Plaintiff later asked to be hired back at a lower position but was told she had walked out. When others quit, they were offered money to come

7

back. For example, Mr. Rappe had previously offered a male salesperson who threatened to quit $5,000.

Plaintiff currently works for Marathon Oil Corporation as a material control specialist. She earns $71,400 per year and received a bonus in March 2019 in the amount of $6,000. She has the same, or better benefits than those she had while working with Defendant.

## DISCUSSION

### I. Count I: Hostile Work Environment and Constructive Discharge.

Plaintiff alleges that she suffered a hostile work environment because of her gender and was constructively discharged. The parties both characterize and analyze Count I as a hostile work environment claim and a constructive discharge claim. *See* **Doc. 37, p. 10; Doc. 33, p. 9.** Therefore, the Court will do so as well. *See, e.g., Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 523 (10th Cir. 2017) (analyzing hostile work environment and constructive discharge separately). Viewing the undisputed facts in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could not conclude that Defendant created a hostile work environment.

#### A. Law on Hostile Work Environment.

To prevail on a hostile work environment claim, Plaintiff must "show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326–27 (10th Cir. 2004)). Specifically, she must show "that under the totality of the circumstances (1) the harassment was

pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was [gender-based]…" *Chavez v. New Mexico,* 397 F.3d 826, 832 (10th Cir. 2005).

A plaintiff must set forth undisputed facts showing that the work environment "is both subjectively *and* objectively hostile or abusive" under this standard. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (internal quotation marks and brackets omitted). To meet the objective portion of this test, the alleged harassment must "be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Id.*

In determining whether abuse is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, the Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *accord Lounds*, 812 F.3d at 1222.

Plaintiff must also show that she was "targeted for harassment because of her ... [gender]." *Sandoval*, 388 F.3d at 1326–27; *see also Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (The "plaintiff must produce evidence that she was the object of harassment because of her gender.").

  B. **<u>Analysis for Hostile Work Environment Claim</u>.**

    1. <u>Plaintiff's evidence of gender animus is speculative.</u> Most of the instances of abuse or disrespect cited by Plaintiff are facially neutral. "Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) ("[B]ecause conduct which is not

gender-based may form a part of the context or environment in which the discriminatory conduct is alleged to have occurred, such conduct may be relevant to, and should be considered in, evaluating a hostile work environment claim."). The Court summarizes some of these facially-neutral instances below:

- Although Plaintiff was assistant manager, Mr. Rappe interviewed others for the branch manager position, before picking her;
- Mr. Rappe did not support her in discipling one of her employees;
- Mr. Rappe picked favorites among staff. He failed to criticize David Anaya for poor sales, but questioned her sales team for losing sales;
- Personality conflicts with David Anaya, an employee who was not under her supervision;
- Mr. Rappe failed to punish David Anaya, who surreptitiously recorded a meeting with Plaintiff;
- Mr. Rappe asked her to bring problems she had with her direct supervisor directly to that supervisor;
- Mr. Rappe did not give her two raises and said she was not qualified for them; Plaintiff did not ask why she was not qualified;[1]
- Plaintiff did not receive a new truck like other branch managers. A new truck was diverted to her when she raised this issue.
- Mr. Rappe would at times not greet her or shake her hand and ignored an email. In contrast, Plaintiff observed that he responded to the prior branch manager, David Ramirez, and also acknowledged the male branch managers at a managers' meeting.
- Mr. Rappe asked her to apologize to a colleague who was rude to her.

Plaintiff believes that these instances of facially neutral disrespect and abuse were gender-based. Plaintiff cites to one clear gender-based discriminatory comment. On their way to a lunch, Mr. Rappe told her he did not know how clients would feel having lunch out with a woman.

Nevertheless, even viewed in the context of this discriminatory comment, it would be speculative to conclude that these other instances of facially neutral abuse were in fact motivated by Plaintiff's gender. *See, e.g. Young v. City of Idabel*, 721 F. App'x 789, 800 (10th Cir. 2018) ("Although facially race-neutral workplace misconduct can play a role in engendering a racially

---

[1] The Court notes that Plaintiff did not bring a separate Title VII wage discrimination claim for denial of her pay raises. The Court has considered the denial of her pay raises for the hostile work environment claim, but not will not separately assert a wage discrimination claim for her.

hostile work environment, it is not sufficient standing alone; there actually must be race-based discriminatory conduct polluting the environment, and Mr. Young offers us little non-speculative evidence of it, and certainly not enough to establish his Title VII claim of hostile work environment."); *See also Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 120 (10th Cir. 2010) ("Without discriminatory overtones, discourteous treatment is simply not sufficient to impose liability under Title VII."), *citing Chavez,* 397 F.3d at 833 ("Title VII is not a code of workplace conduct ... a hostile environment claim requires a showing not only of severe and pervasive harassment, but of severe and pervasive harassment based on gender.")

Considering the totality of the circumstances, Plaintiff has not produced sufficient evidence such that a reasonable jury could conclude she was targeted for abuse by Mr. Rappe because of her gender. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1327 (10th Cir. 2004) (plaintiff must produce evidence she was targeted for harassment because of her gender); *See also Young v. City of Idabel*, 721 F. App'x 789, 801 (10th Cir. 2018) (aside from one use of racial slur, "[Plaintiff] has pointed to no concrete, non-speculative instances of racially discriminatory conduct by other IFD employees. Consequently, he has not demonstrated that the firehouse was an objectively hostile work environment on the basis of race. Mr. Young's hostile-work-environment claim must fail.").

    2. <u>Abuse was not sufficiently severe or pervasive</u>. Alternatively, Plaintiff's hostile work environment claim also fails because the abuse was not sufficiently pervasive or severe to alter the conditions of her employment and create an abusive working environment. Severity and pervasiveness are "evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

11

interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).

Here, this one overt discriminatory statement falls below the threshold required to survive summary judgment. Generally, "two comments fall far short of the 'steady barrage' required for a hostile environment claim." *Chavez v. New Mexico,* 397 F.3d 826, 832 (10th Cir.2005); *See also Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994) (explaining that a "plaintiff must show more than a few isolated incidents of racial enmity" to survive summary judgment on a Title VII claim) (internal quotation marks omitted); *Young v. City of Idabel*, 721 F. App'x 789, 801 (10th Cir. 2018) (one racial slur, along with facially neutral misconduct, insufficiently severe or pervasive). Moreover, the incidents at issue here are not sufficiently severe to substantiate a hostile work environment claim.

Even when considering the facially neutral abuse and disrespect along with the discriminatory statement, the Court concludes the abuse was not so pervasive or severe that a reasonable person would find it altered "the conditions of her employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012) (court should consider whether facially neutral or ambiguous conduct was in fact gender motivated and whether gender motivated conduct was so severe or pervasive as to create Title VII liability); *Young v. City of Idabel*, 721 F. App'x 789, 799 (10th Cir. 2018) ("white firefighters' insubordination and disrespect created a hostile work environment—does not fare better. Mere insubordination—even an outright refusal to do one's job—does not amount to a Title VII violation."); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1217–18 (10th Cir. 2008) (junior colleague's criticism, rudeness, and failure "to interact ... at meetings" did not amount to severe and pervasive harassment). Many of the

undisputed facts show that colleagues and or subordinates were discourteous and disrespectful to Plaintiff, and no action was taken by Mr. Rappe to correct them. The undisputed facts also show that Mr. Rappe likely made poor management decisions. But under the specific circumstances of this case, they do not make for a Title VII hostile work environment claim.

      **C.**      <u>**Analysis for Constructive Discharge claim**</u>**.**

Plaintiff also alleges a constructive discharge claim. A constructive discharge claim generally rests on a hostile work environment claim. *See, e.g., Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015). For similar reasons as above, the constructive discharge claim also fails. To show a constructive discharge claim, Plaintiff must not only prove a hostile work environment claim, but must show that "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S. Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004), *quoted in Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012). "Essentially, a plaintiff must show that she had *no other choice* but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004). Because the Court concludes that the abuse was not so severe or persistent to alter her employment conditions and create an abusive environment, the Court also concludes that the working conditions were not so intolerable that a reasonable person would have felt compelled to resign.

Therefore, Count I is **DISMISSED.**

**II.**      <u>**Count II: Emotional Distress Claim**</u>.

In her response, Plaintiff admits her emotional distress claim must be dismissed. Therefore, Count II is **DISMISSED.**

13

## III. Count III: New Mexico's Fair Pay for Women Act.

Plaintiff also asserts that Defendant paid her less than it paid male branch managers, in violation of the New Mexico Fair Pay for Women Act. The act provides that:

> No employer shall discriminate…between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions, except where the payment is made pursuant to a:
>
>     (1) seniority system;
>     (2) merit system; or
>     (3) system that measures earnings by quantity or quality of production.

NMSA § 28-23-3(A).

There is little New Mexico caselaw interpreting the Fair Pay for Women Act. However, the operative language here is similar to the Federal Equal Pay Act. *Compare* N.M. Stat. Ann. § 28-23-3(A) (FPWA prohibits discrimination "between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions") *with* 29 U.S.C. § 206(d)(1) (Equal Pay Act) (similar language). Therefore, the Court will look to caselaw interpreting similar language in the Equal Pay Act.

Here, Plaintiff submitted undisputed material facts that she was paid less than her male branch manager peers for the same job. *See* **Doc. 37, p. 16.**[2] Therefore, Plaintiff carried her *prima facie* burden under the Fair Pay for Women Act. In its reply, Defendant did not dispute this.

Rather, Defendant's sole argument in its reply is that the pay disparity is justified, because it was based on a merit system. Whether the pay disparity is justified under a merit system is an

---

[2] To the extent Defendant argues that Plaintiff did not produce these facts at her deposition, Defendant did not dispute any of Plaintiff's additional facts as upon inadmissible documents. *See* **Doc. 40, p. 3-4.**

14

affirmative defense. *See Cnty. of Wash. v. Gunther,* 452 U.S. 161, 168, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (describing the EPA's "four affirmative defenses"); *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015) (defendant bears the burden of showing that the merit system affirmative defense justifies the pay disparity).

To satisfy its summary judgment burden as to this affirmative defense, Defendant must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Mickelson v. N.Y. Life Ins. Co.,* 460 F.3d 1304, 1312 (10th Cir. 2006) (citation omitted), *quoted in Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015).

Initially, the Court notes that Defendant did not assert this affirmative defense in its motion, therefore Plaintiff did not have notice to produce material evidence to rebut the affirmative defense.

Moreover, Defendant has not provided any material fact or any record to support its assertion that the pay disparity was based on a merit system or seniority system. As the moving party with the burden of persuasion as to the affirmative defense, Defendant failed to show there is no genuine dispute of material fact as to its affirmative defense. Therefore, Plaintiff's claim under New Mexico's Fair Pay for Women Act (Count III) remains.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 33**) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Counts I and II are **DISMISSED.**

CHIEF UNITED STATES DISTRICT JUDGE